PURE OIL CO. v. ROSS et al.

No. 10270.

Court of Civil Appeals of Texas. Galveston.

July 16, 1936.

Rehearing Denied Nov. 25, 1936.

Vinson, Elkins, Sweeton & Weems and David T. Searls, all of Houston, for appellant.

Albert J. De Lange, of Houston, and Maco Stewart and Noble Carl, both of Galveston, for appellees.

GRAVES, Justice.

At the suit of Ellen B. Ross, a widow, Maco Stewart, and Albert De Lange, against appellant, the Pure Oil Company, a corporation, and others, to remove an alleged cloud cast on their title to the south 463.11 acres described in a certain oil lease of April 26 of 1928, executed by Ellen B. Ross et àl. to Paul Lobit, and claimed to have passed by mesne assignments down under the lessee to the appellant, the trial court, sitting without a jury, and after hearing the evidence for both sides, rendered judgment against the appellant in favor of such petitioning appellees as follows:

"It is, therefore, on this the 14th day of November, 1934, ordered, adjudged, and decreed that the cloud cast on the title of plaintiffs by virtue of certain mineral lease from Ellen B. Ross and J. O. Ross to Paul Lobit, dated April 26, 1928, and recorded in Book 410, page 514, and by virtue of assignment from said Paul Lobit to Charles Lauer of record in Book 434, page 168, and assignment from said Charles Lauer to Larry W. Morris of record in Book 428, page 91, and assignment from said Lauer and Morris to Pure Oil Company of record in Book 462, page 288, be and is hereby removed, and said mineral lease and the record thereof and said assignments are hereby annulled and declared to be void and of no further force and effect."

In this court appellant inveighs against that determination below upon these five propositions of law:

"(1)  Appellees' suit to reform and cancel the oil and gas lease was brought almost six years after - the execution and recording of such lease, and was, therefore, barred by the four years statute of limitation.    Article 5529, Tex.Rev.Statutes 1925.

"(2)  Since the undisputed evidence discloses that The Pure Oil Company paid a valuable consideration for an assignment of said lease in so far as it covers the 463.11 acres and had no notice of the claims asserted in the petition of appellees, it is entitled to be protected as an innocent purchaser.

"(3)  Since the time of the alleged forfeiture of the lease and before the discovery of oil, Maco Stewart accepted rentals tendered by The Pure Oil Company as rental payments on the 463.11 acres and retained the same for more than a year and also accepted a conveyance of such rentals and thereby waived any right to declare that a forfeiture had already taken place.

"(4)  The lands covered by the lease constituted the separate property of Ellen B. Ross and it was necessary for appellees to establish that the alleged mistake in the date of 'April 27, 1933' was a mistake on the part of Ellen B. Ross as well as the other parties to the instrument.

"(5)  The provisions of the lease claimed by appellees to be ambiguous and grounds for a forfeiture cannot be the basis of a forfeiture of the lease, because 'if the provision is ambiguous, that alone condemns it as a forfeiture provision.' "

None of these contentions can be sustained:

(1)  As stated, the suit was clearly one to remove a cloud from title to land.

owned and held by the petitioning appellees, alleged to have been cast thereon by the claim of appellant to the validity of the lease that such appellees charged had not only terminated long before the acquirement of appellant's asserted right therein, but which was also null and void for a number of other stated reasons; giving the petition of the plaintiffs below the benefit of all reasonable intendments and implications to which it is entitled in the state of the record, it is in sum nothing but a suit to remove a cloud from their claimed title, hence the five-year statute of limitation, R.S. art. 5509, and not the four-year statute, R.S. art. 5529, thus claimed under by the appellant, applied. Colquitt v. Eureka Producing Co. (Tex.Com.App.) 63 S.W.(2d) 1018, citing Stafford v. Stafford, 96 Tex. 106, 70 S.W. 75.

■ (2) In the state of the record, appellant's claim to having been an innocent purchaser of valid rights, under this lease it alleged to have been alive at the time it bought, is not good, for these among other reasons: In the first place, all the assignments of the lease through Lobit under which it claimed, and particularly the direct one to it from Lauer and Morris of date April 12, 1933, filed for record May 16, 1933, and which record was particularly declared upon by the appellees as having created the cloud upon their title they sought herein to have removed, constituted nothing but a quitclaim of "all right, title, and interest in and to said lease" that any of appellant's predecessors in claim had, such transfers all further reciting "all rentals and royalties due and payable under such lease have been duly paid," whereas the evidence justified, if it did not require, the learned trial court to find not only that none of such rentals had been paid at the several dates of these different transfers of the lease, but that the successive and respective grantees under the transfers had known at the times they severally took the same that none of the rentals on those dates due under the lease had been paid at all; wherefore, having at most acquired nothing but a chance at a title from leasehold grantors who at the several times of their acquirements of transfers of the lease either paid nothing therefor, or knew at the time that the lease had expired by its own terms because of the failure of grantees thereunder to pay the called for rentals, appellant itself could not have been an innocent purchaser. R. S. arts. 6631 and 6646; White v. McGregor, 92 Tex. 556, 50 S.W. 564, 71 Am.St.Rep. 875; Houston Oil Co. v. Niles (Tex.Com.App) 255 S.W. 604; Carter & Bro. v. Davis (Tex.Civ.App.) 88 S.W.(2d) 596.

■ (3) As indicated supra, the determinative issue in the cause is not one of forfeiture, but whether or not the lease had terminated or was otherwise invalid at the time of appellant's transfer thereof, hence whether or not the recording thereof cast a cloud upon a title the plaintiff-appellees had to the land; the undisputed facts show that Stewart had on February 10, of 1933, not only bought the fee-simple title to the 463.11 acres involved from Mrs. Ross, but had also at that date taken an assignment from her to all possible outstanding mineral rights therein, under an understanding between them that the lease herein claimed under by the appellant had been terminated by its own terms under the failure of grantees therein to pay the rentals specified thereunder, and without any knowledge or notice on Stewart's part at that time that the appellant had or was asserting any interest under such lease; in these circumstances, the claimed acceptance by Stewart of $463.11 rentals deposited by appellant in the bank to the credit of Stewart in April of 1933, and the retention thereof by a telephone operator in Stewart's office, did not have the legal effect of reviving such lease or of extending its operation as against Stewart for one year from the date of that deposit, for at least these reasons: By the compelling force of the evidence the lease and all rights thereunder that might otherwise pass to the appellant had already expired for the failure to pay the rentals thereunder at the prior times when due, of which expiration the appellant either knew or was charged with knowing; further, Stewart himself was out of the city at the time, knew nothing of appellant's claim, nor was charged with knowledge thereof, because his stated purchase from Mrs. Ross of the fee-simple title and all outstanding leasehold interests in her had been made in February of 1933, whereas appellant's claimed leasehold assignment had not been filed for record until May 16, of 1933, hence he was not charged with notice thereof. White v. McGregor, 92 Tex. 556, 50 S.W. 564, 71 Am.St.Rep. 875.

Furthermore, immediately on returning to the city and being advised of the deposit so made by appellant, Stewart made reasonable effort to apprise himself of what it covered, failing in which he tendered the return thereof in this trial.

■ (4 and 5) Since these contentions attack positions not depended upon by the appellees for any determinative effect on the questions raised by the appeal, they become immaterial, and need not be determined one way or the other.

■ In conclusion, and by way of résumé—in further answer to appellant's presentments—the evidence justifies, hence in the state of this record presumptively requires, these findings on the facts:

Under the agreement between Ross and Lobit evidenced by the lease of April 26, 1928, $1 per acre per year was to be paid for five years, terminating the lease within five years from that date, unless mineral development of the property, which was a major consideration for the agreement, were had in the meantime; no development was ever had, wherefore the provisions appertaining to that contingency never became operative; Lobit, the original lessee, merely paid the $1 rentals for the first years, which kept the contract in force only until April 26, of 1929, whereupon it terminated, no rentals thereafter having ever been paid by any transferee down under Lobit; Lauer, the grantee under Lobit, only paid the latter $100 for a lease that had cost him $1,528.11, knowing at the time that the additional $1 per acre was due and unpaid for the second year, which he did not pay; that Morris paid Lauer nothing whatever for the transfer to himself; that Lobit merely transferred to Lauer "the right, title, and interest" of Lobit that he might have in the lease, and in turn Lauer and Morris likewise so transferred or assigned to the appellant only their "right, title and interest" therein, knowing at the time that still none of the rentals subsequent to Lobit's original payment to Ross had ever been made to any one; that Lauer was told by Lobit at the time the transfer between them occurred what the rental carried in the lease was, and Lauer responded that he would pay that amount therefor, but never did so; that after the first year during which no such rentals had been paid had expired, Mrs. Ross, the lessor, and Tolar Hamblen, both recognizing that such failure to pay the rental due upon the Lobit lease had terminated it, between themselves executed a new lease on the property from Mrs. Ross to Hamblen, whereupon Hamblen transferred this lease to him over to the Humble Company, which latter concern assigned an interest in the same to Lauer and Morris, with a recitation therein to the effect that on October 14, of 1929, theretofore Mrs. Ross had leased this same acreage to Hamblen and that the latter had assigned it to the Humble Company; that Lauer and Morris thus knew from the record that the lease from Ross to Lobit had already expired when they took this last-mentioned transfer from the Humble Company; with the record in this state, the evidence is undisputed that, despite the knowledge it thus had and the notice it was affected with, and although it only got a quitclaim to whatever interest Lauer and Morris still had in the Ross to Lobit lease, appellant in taking that transfer made "no investigation as to the status of the lease"; this suit was not filed until May 5, of 1934, hence at that time the trial court was clearly justified in holding that the Ross lease to Lobit had long since expired, and that appellant was entitled to nothing.

An affirmance will therefore be ordered. Affirmed.

PLEASANTS, C. J., not sitting.